EDWARD A. VAUGHAN *v.* ERNEST H. WODEHOUSE AND J. L. P. ROBINSON, EXECUTORS UNDER THE WILL AND OF THE ESTATE OF MARY E. FOSTER, DECEASED.

No. 2167.

ARGUED JANUARY 15, 1935.　　　DECIDED FEBRUARY 1, 1935.

COKE, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

This cause comes here on the following reserved question: "Should respondents' demurrer be sustained upon

any of the grounds therein stated?" The demurrer referred to was interposed to a bill in equity brought by Edward Vaughan against respondents Ernest H. Wodehouse and J. L. P. Robinson, executors under the will and of the estate of Mary E. Foster, deceased, for the payment of a legacy. In his amended bill the complainant alleges in substance that Mary E. Foster, at the time of her death in Honolulu on December 17, 1930, left a last will and testament dated December 23, 1926, together with a codicil dated January 17, 1930; that the will and codicil were duly probated on February 11, 1931; that the respondents were nominated and appointed executors by the testatrix and are now the duly appointed, qualified and acting executors under the will and of the estate of Mary E. Foster and that they have reduced to possession all of the personal property of which the testatrix died possessed; that Charlotte von Hasslocher, now deceased, was the half sister of the testatrix and that the complainant, formerly known by the name of Emil Alexander Hasslocher, is the child of Charlotte and Eugene von Hasslocher and was born to them in lawful wedlock; that the third paragraph of the codicil provides: "I revoke the legacy or sum of $25,000. bequeathed by Article 'Fifth' of my said will to each of my nephews and nieces living at the time of my death and in lieu thereof I give and bequeath the legacy or sum of fifty thousand dollars ($50,000.) to each of my nephews and nieces living at the time of my death other than those nephews and nieces specifically mentioned in my said will"; that there are sufficient moneys and assets in the possession of the respondents as executors to pay all the debts of the testatrix and all of the legacies bequeathed by her after paying to him his legacy of $50,000; and that he has demanded the payment of said legacy but the respondents have refused to pay. The complainant then prays for relief in the sum of $50,000 together with interest

at eight per cent per annum from one year after the death of the testatrix until paid.

The demurrer raises but one question, namely, whether it was the intention of the testatrix, as shown by her will and codicil, to include the complainant, who is a nephew of the half blood, in her bequest of $50,000 to each of her nieces and nephews.

It is contended by the respondents that the will and codicil show on their face that this was not the intention of the testatrix and that therefore the reserved question should be answered in the affirmative. The portions of the will and codicil, other than that set out in the complaint, which are pertinent to the question, are as follows: Article five of the will: "I give and bequeath the sum of twenty-five thousand dollars ($25,000.00) to each of my nephews and nieces living at the time of my death other than those specifically mentioned in this will," and paragraph four of the codicil: "I give and bequeath the legacy or sum of twenty-five thousand dollars ($25,000.) to Mrs. Ella Henkenius the daughter of my half sister Mrs. Von Hasslocker for her own use and benefit."

In support of their contention it is argued by the respondents that the specific mention of Ella Henkenius as "the daughter of my half sister" in the fourth paragraph of the codicil manifests an intention on the part of the testatrix to differentiate between nephews and nieces of the whole blood and those of the half blood and that the words above quoted indicate that the testatrix did not consider the daughter of her half sister a niece and therefore the complainant, the son of the half sister, was likewise not considered a nephew within the meaning of paragraph three of the codicil. The respondents refer us to *Greer* v. *Greer,* 136 S. E. (S. C.) 742, which they urge supports their interpretation of the testatrix's intention. This case was reviewed in *Hocker* v. *Stevens* (Tex.), 18 S. W. (2d) 842,

where the court took a different view and refused to follow the *Greer* case. In the Texas case the nephews and nieces of the half blood of R. B. Stevens, deceased, brought suit against the brothers and sisters of the whole blood and of the half blood and nephews and nieces of the whole blood of the decedent for the construction of the following portion of the decedent's will: "I give, devise and bequeath to my brothers and sisters and half brothers and sisters then living at the time of my death, and unto my nephews and nieces then living at the time of my death, to each one of them share and share alike absolutely in fee simple." The only question before the court was whether the nephews and nieces of the half blood took under the will. Speaking on this point, and after discussing other Texas cases, the court said (p. 843) : "Under the above cases, and many others we have examined, it is held that a devise in a will to nephews and nieces as a class, not naming them, embraces all of that class who are living at the time of the death of the testator, and without regard as to whether they are of the whole blood or half blood. We have referred to the above cases for the purpose only as showing the generally accepted rule. The point made by appellants, however, is that, the testator having designated his brothers and sisters of the half blood, and not having designated his nephews and nieces of the half blood, shows an intention upon his part to discriminate against the nephews and nieces of the half blood. Appellants refer us to Greer v. Greer, 138 S. C. 475, 136 S. E. 742, a South Carolina case, as sustaining their contention. In that case the pertinent part of a paragraph of the will reads as follows: 'I give, devise and bequeath, after the payment of the above legacies, all the rest and residue of my property to my nephews and nieces and my half-sisters, Mrs. Lizzie Cobb and Mrs. E. P. Satterfield, each of my nephews and nieces and half-sisters taking an

equal share.' * * * 'It was stated in argument and admitted, that the only nephews and nieces of the half blood which testator had are the children of the two half sisters, viz: Mrs. Lizzie Cobb and Mrs. E. P. Satterfield. It was the clear intent of the testator by this provision of his will to put his nephews and nieces on equality with his half sisters; this purpose would be defeated if the children of his half sisters were allowed to come in and share with them and the nephews and nieces of the whole blood.' * * * 'The use of the words, "my half-sisters," seems to indicate the intention of the testator that the residuum of his estate should be equally divided among his nephews and nieces of the whole blood and his two half-sisters, each taking an equal share. If the children of these two half-sisters are let in it would upset the testator's plan of distribution. The terms nephews and nieces ordinarily include those of the half blood unless there is something in the context of the instrument to show a contrary intention. The testator uses the words, "my half-sisters." If he intended that nephews and nieces of the half blood should take, it seems that he would have said so in this connection and while his mind was fixed on this difference of relationship.' The case is fairly in point, if not affected by the statute of that state referred to in the decree. But we are not prepared to concur in the conclusion reached as stating a rule of general application, as we do not think the reasoning upon which the conclusion is based is sound, that is, 'that if he (the testator) intended that nephews and nieces of the half blood should take, it seems that he would have said so in this connection and while his mind was fixed on this difference of relationship.' Could not the same be said in all instances where there are half-blood nephews and nieces, and half-blood brothers and sisters, and thus defeat the rule admitted to be the law in the opinion that, 'the terms nephews and nieces ordinarily

include those of the half blood.' The reason for the conclusion reached that the nephews and nieces of the two half-sisters did not take because the testator, had it been his intention that they should do so, must so say in his will, if generally applied, there would seem to be no rule. The opinion refers to no case expressing a similar view, and we have found none. We are not willing to follow the case as having general application." The reasoning in the Texas case is logical and conclusive and is entirely applicable to the situation now before us.

It is not disputed that the words "brothers and sisters" and "nephews and nieces" in a will ordinarily and *prima facie* include those of the half blood. It is contended, however, that the rule is subject to the limitation that if there is other language in the will to indicate a different intention the usual meaning of these words will be superseded. We think after a study of the entire testament that there is no express or implied intention on the part of the testatrix to exclude the complainant from her bounty and that the general rule should be applied.

If the will stood alone without the codicil there would be no doubt that under the fifth article both the complainant and his sister Ella would be entitled to the bequest therein provided. The third paragraph of the codicil is identical in its terms with the fifth article of the will except that the bequests were increased from $25,000 to $50,000. There is nothing in either of these clauses from which the conclusion can be drawn that the testatrix intended to discriminate between nephews and nieces of the half blood and those of the whole blood. It is apparent that the use by the testatrix of the words "daughter of my half sister" in the codicil was for the purpose of more clearly identifying the legatee.

It would be a factitious and unwarranted interpretation of the fourth paragraph of the codicil to say that it

manifests an intention to make a distinction between nieces and nephews of the whole blood and those of the half blood, thus excluding the complainant from the testatrix's bounty. The more reasonable view is that the purpose of the testatrix was, for whatever motive that may have prompted her, not to increase the bequest which, as shown by the fifth article of the will, she intended to make to Ella, but to increase the amount of the legacies which she intended to bequeath to other nieces and nephews, including those of the half blood as well as those of the whole blood.

The reserved question is answered in the negative.

*J. V. Hodgson* (*R. J. O'Brien* with him on the brief) for complainant.

*A. G. M. Robertson* (*Robertson & Castle* on the briefs) for respondents.